**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CARIDAD HILAIRE and TAWANA MCCANTS, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> DENTAQUEST GROUP, INC., <br><br> *Defendant.* | **CLASS ACTION** <br><br> **Case No. 1:26-cv-12513** <br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs Caridad Hilaire and Tawana McCants, individually and on behalf of a class of similarly situated persons, ("Plaintiffs") bring this Class Action Complaint and allege the following against defendant DentaQuest Group, Inc. ("DentaQuest" or "Defendant"), based upon personal knowledge with respect to Plaintiffs and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

**NATURE OF THE ACTION**

1. Plaintiffs bring this class action against DentaQuest for its failure to properly secure Plaintiffs' and Class Members' personally identifiable information ("PII") and personal health information ("PHI"). The PII and PHI may have included victims' names, Social Security numbers, dates of birth, and medical information.

2.      DentaQuest failed to comply with industry standards to protect

information systems that contain PII and PHI. Plaintiffs seek, among other things,

orders requiring DentaQuest to fully and accurately disclose the nature of the

information that has been compromised and to adopt sufficient security practices and

safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3.      The ransomware group ShinyHunters recently reported having gained

access to over 230 gigabytes of DentaQuest data, which it has threatened to disclose to

the public.[1]

4.      DentaQuest subsequently acknowledged "actively managing a

cybersecurity incident involving unauthorized access to a limited portion of our

network."

5.      As a large dental benefits provider, DentaQuest knowingly obtained

sensitive PII and PHI and had a resulting duty to securely maintain that information in

confidence. Plaintiffs and Class Members would not have provided their PII and PHI to

DentaQuest if they had known that DentaQuest would not ensure that it used adequate

security measures.

6.      Plaintiffs seek to remedy these harms individually and on behalf of all

other similarly situated individuals whose PII and/or PHI were exposed in the Data

Breach. Plaintiffs seek remedies including compensation for time spent responding to

---

[1] "ShinyHunters Breaches DentaQuest: Medicaid Dental Insurer Targeted," Ciphers Security, June 1, 2026, available at https://cipherssecurity.com/dentaquest-shinyhunters-breach-medicaid-2026/ (last visited June 3, 2026).

the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief including substantial improvements to DentaQuest's data security policies and practices.

## PARTIES

7.      Plaintiff Caridad Hilaire is a resident of Leesburg, Florida, who has been a DentaQuest plan member for approximately three years.

8.      Plaintiff Tawana McCants is a resident of Oglethorpe, Georgia, who has been a DentaQuest plan member for approximately one year.

9.      Defendant DentaQuest Group, Inc. is a Delaware corporation, with its principal place of business in Wellesley Hills, Massachusetts.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a state other than Massachusetts, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

11.      This Court has personal jurisdiction over DentaQuest because DentaQuest maintains its principal place of business in Massachusetts and conducts substantial business in this District through its principal place of business; engaged in the conduct at issue herein from and within this District; and otherwise has substantial contacts with this District.

3

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because DentaQuest resides in this District, and this District and Division are where a substantial part of the acts, omissions, and events giving rise to Plaintiffs' claims occurred.

## FACTUAL ALLEGATIONS

### The Data Breach

13.    DentaQuest describes itself as "one of the largest dental benefits providers in the U.S. by membership," providing benefits for approximately 32 million Americans.[2] "Members have access to quality dental care nationwide through our PPO network of approximately 145,000 unique providers and more than 100,000 access points for government programs. We also are the largest Medicaid and CHIP dental benefits administrator in the U.S., with programs in 37 states and counting.[3]

14.    Due to the nature of the services it provides, DentaQuest acquires and electronically stores PII and PHI. DentaQuest was therefore required to ensure that PII and PHI were not disclosed or disseminated to unauthorized third parties without Plaintiffs' and Class Members' express written consent.

---

[2] "About Us," DentaQuest, available at https://www.dentaquest.com/en/about-us (last visited June 3, 2026).

[3] *Id.*

15.    On or around May 23, 2026, ShinyHunters, a ransomware and extortion group claimed to have successfully infiltrated DentaQuest's system and gained access to DentaQuest's sensitive data.[4]

16.    ShinyHunters posted:

You wouldn't want us to describe what data and how much data was compromised publicly. It is in your best interests to reply to us or we are leaking it all by the deadline. This is a final warning to reach out by 27 May 2026 before we leak along with several annoying (digital) problems that'll come your way. Make the right decision, don't be the next headline. Pay or Leak.[5]

17.    According to a subsequent post by ShinyHunters, May 27, 2026 came and went, but DentaQuest did not pay the ransom.[6]

18.    On May 30, 2026, ShinyHunters posted, "The company failed to reach an agreement with us despite our incredible patience, all the chances and offers we made. They don't care."

19.    On or around June 1, 2026, a data breach researcher observed that 233 gigabytes of DentaQuest data were dumped on the internet.[7]

---

[4] *Id.*

[5] *Id.*; *see also* "DentaQuest, LLC," Ransomware.live, May 23, 2026,

https://www.ransomware.live/id/RGVudGFRdWVzdC5jb21Ac2hpbnlodW50Z XJz (last visited June 3, 2026).

[6] "DentaQuest, LLC," Ransomware.live, May 30, 2026, https://www. ransomware.live/id/RGVudGFRdWVzdCwgTExDLkBzaGlueWh1bnRlcnM (last visited June 3, 2026).

[7] Troy Hunt, "Breach Week: 7-Eleven; Ameriprise; Mytheresa; Kemper; Charter; The Data Breach Disclosure Lag; Welcoming the Bhutanese Government," June 1, 2026, available at https://www.troyhunt.com/weekly-update-506/ (last visited June 3, 2026).

20.     On the same day, DentaQuest posted on its website that its data was compromised. DentaQuest described the cyberattack as a "cybersecurity incident involving unauthorized access to a limited portion of our network."[8]

21.     According to DentaQuest's assessment, it did not know the extent of the breach, stating "We are working as quickly and carefully as possible to determine the exact scope of the incident, including the nature and extent of any data that may have been compromised."[9]

22.     Despite not knowing the exact nature and extent of the data compromised, DentaQuest asserted that it "took immediate action to secure our environment, contain the attack and mitigate the threat."[10]

23.     Through this lawsuit, Plaintiffs aim to understand the full extent of the Data Breach, DentaQuest's actions in response to the breach and any measures it has taken to secure Plaintiffs' PII and PHI, and obtain relief that redresses the harm to Plaintiffs' and Class Members' interests, and ensure that DentaQuest has proper measures in place to prevent similar incidents from occurring in the future.

---

[8] "DentaQuest recently experienced a cybersecurity incident," DentaQuest, June 1, 2026, available at https://www.dentaquest.com/en/security-update-0526 (last visited June 3, 2026).

[9] *Id.*

[10] *Id.*

**DentaQuest's Security Representations**

24. DentaQuest's website has a copy of its Health Insurance Portability and Accountability Act ("HIPAA") privacy notice and its "Notice of Privacy Practices" that HIPAA requires all healthcare providers to make available to their patients.

25. According to DentaQuest's HIPPA privacy notice, DentaQuest is required by law to "[m]aintain the privacy of your health information."[11]

26. DentaQuest also lists its potential uses for patient information, including for research purposes and to assist law enforcement.[12] Nowhere does DentaQuest list cyber thieves as a potential source for disclosure.

27. DentaQuest promises in its Notice of Privacy Policy that it "will let you know promptly if a breach occurs that may have compromised the privacy or security of your information" and that it "must follow the duties and privacy practices described in this notice and give you a copy of it."[13] To date, it has provided a breach notification letter to affected patients.

**The Healthcare Sector is a Primary Target for Data Breaches**

28. DentaQuest was on notice that companies in the healthcare industry are susceptible targets for data breaches.

---

[11] "HIPAA Privacy Policy," DentaQuest, https://www.dentaquest.com/en/policies/hipaa-privacy-policy (last accessed June 3, 2026) ("HIPAA Privacy Policy"); *see also* "Notice of Privacy Practices," DentaQuest, Feb. 16, 2026, https://www.dentaquest.com/en/policies/notice-of-privacy-practices (last accessed June 3, 2026).

[12] *See* HIPAA Privacy Policy and Notice Privacy Practices.

[13] "Notice of Privacy Practices," DentaQuest, Feb. 16, 2026, https://www.dentaquest.com/en/policies/notice-of-privacy-practices (last visited on June 3, 2026).

7

29.    DentaQuest was also on notice that the Federal Bureau of Investigation has been concerned about data security in the healthcare industry. On April 8, 2014, the FBI's Cyber Division issued a Private Industry Notification to companies within the healthcare sector, stating that "the health care industry is not technically prepared to combat against cyber criminals' basic cyber intrusion tactics, techniques and procedures (TTPs), much less against more advanced persistent threats (APTs)" and pointed out that "[t]he biggest vulnerability was the perception of IT healthcare professionals' beliefs that their current perimeter defenses and compliance strategies were working when clearly the data states otherwise." The same warning specifically noted that "[t]he FBI has observed malicious actors targeting healthcare-related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or PII."[14]

30.    The number of reported North American data breaches increased by over 50 percent in 2021, from 1,080 in 2020[15], to 1,638 in 2021.[16] As a recent report reflects,

---

[14] Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain (Apr. 8, 2014), FBI Cyber Division Private Industry Notification (available at https://info.publicintelligence.net/FBI-HealthCare CyberIntrusions.pdf) (last accessed June 2, 2026).

[15] *See* Verizon 2021 Data Breach Investigations Report, at 97, https://www.verizon.com/business/resources/reports/2021-data-breach-investigations-report.pdf (last accessed June 2, 2026).

[16] *See* Verizon 2022 Data Breach Investigations Report, at 83 (available at https://www.verizon.com/ business/resources/reports/2022/dbir/2022-data-breach-investigations-report-dbir.pdf) (last accessed June 2, 2026).

"[h]ealthcare has increasingly become a target of run-of-the-mill hacking attacks and the more impactful ransomware campaigns."[17]

31.    At the end of 2018, the healthcare sector ranked second in the number of data breaches among measured sectors, and had the highest rate of exposure for each breach.[18] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[19] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy.[20]

32.    Healthcare-related breaches have persisted because criminals see electronic patient data as a valuable asset. According to the 2019 HIMSS Cybersecurity Survey, 82 percent of participating hospital information security leaders reported

---

[17] *Id.* at 62.

[18] *2018 End-of-Year Data Breach Report*, Identity Theft Resource Center (available at https://www.idtheftcenter.org/2018-data-breaches) (last accessed June 2, 2026).

[19] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010) (available at https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/) (last accessed June 2, 2026).

[20] *Id.*

having a significant security incident in the previous 12 months, with a majority of these known incidents being caused by "bad actors" such as cybercriminals.[21] "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[22]

33.     The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[23]

34.     As major healthcare services providers, DentaQuest knew, or should have known, the importance of safeguarding Plaintiffs' and Class Members' PII and PHI entrusted to them and of the foreseeable consequences if that data was disclosed. This

---

[21] *2019 HIMSS Cybersecurity Survey* (available at https://www.himss.org/sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report. pdf) (last accessed June 2, 2026).

[22] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, Apr. 4, 2019 (available at https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks) (last accessed June 2, 2026).

[23] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n (Oct. 4, 2019) (available at https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals) (last visited June 2, 2026).

includes the significant costs that would be imposed on Plaintiffs and Class Members by virtue of a breach. DentaQuest failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

### DentaQuest Stores Plaintiffs' and Class Members' PII and PHI

35.     DentaQuest obtained and stored a massive amount of PII and PHI. As a condition of engaging in health care services, DentaQuest and its affiliates required that patients entrust them with highly confidential PII and PHI.

36.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII and PHI, DentaQuest assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiffs' and Class Members' PII and PHI from disclosure.

37.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI, and relied on DentaQuest to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

### PII and PHI are Valuable and Subject to Unauthorized Disclosure

38.     DentaQuest was aware that the PII and PHI it collected is highly sensitive and of significant value to those who would use it for wrongful purposes.

39.     PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes

11

including identify theft, and medical and financial fraud.[24] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web." PHI can sell for as much as $363 on the dark web, according to the Infosec Institute.[25]

40.     PHI is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

41.     Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's PHI is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they

---

[24] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed June 2, 2026).

[25] Center for Internet Security, *Data Breaches: In the Healthcare Sector* (available at https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/) (last accessed June 2, 2026).

frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[26]

42.      The ramifications of DentaQuest's failure to keep Plaintiffs' and Class Members' PII and PHI secure are long-lasting and severe. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

43.      Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

44.      Approximately 21% of victims did not realize their identity was compromised until more than two years after it happened. [27] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[28]

---

[26] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, Kaiser Health News (Feb. 7, 2014) (available at https://khn.org/news/rise-of-indentity-theft/) (last accessed June 2, 2026).

[27] *See* Medical ID Theft Checklist (available at https://www.identityforce.com/blog/medical-id-theft-checklist-2) (last accessed June 2, 2026).

[28] Experian, The Potential Damages and Consequences of Medical Identityy Theft and Healthcare Data Breaches (available at https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf) (last accessed June 2, 2026).

45.     DentaQuest knew, or should have known, the importance of safeguarding PII and PHI entrusted to them and of the foreseeable consequences if their data security systems were breached. This includes the significant costs that would be imposed on Plaintiffs and Class Members because of a breach. DentaQuest failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**The Data Breach Exposed Plaintiffs and Class Members
to Identity Theft and Out-of-Pocket Losses**

46.     Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

47.     Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII and PHI, DentaQuest's policies and practices with respect to maintaining the security of Plaintiffs' and Class Members' PII and PHI were reckless, or at the very least, negligent.

48.     In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiffs and Class Members should be compensated for the time they have expended because of DentaQuest's misfeasance.

14

49.     Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[29]

50.     As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiffs and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

   a.   losing the inherent value of their PII and PHI;

   b.   identity theft and fraud resulting from the theft of their PII and PHI;

   c.   costs associated with the detection and prevention of identity theft;

   d.   costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

   e.   lowered credit scores resulting from credit inquiries following fraudulent activities;

   f.   costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and

---

[29] 2025 LexisNexis True Cost of Fraud Study, https://risk.lexisnexis.com/insights-resources/research/us-ca-true-cost-of-fraud-study (last accessed June 2, 2026).

the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

g. the continued imminent injury flowing from potential fraud and identity theft posed by their PII and PHI being in the possession of one or more unauthorized third parties.

**DentaQuest's Lax Security Violates HIPAA**

51. DentaQuest had a non-delegable duty to ensure that all PHI it collected and stored was secure.

52. DentaQuest is bound by HIPAA (*see* 45 C.F.R. § 160.102) and, as a result, is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

53. These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

54. HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

16

55.     HIPAA requires that DentaQuest implement appropriate safeguards for this information.

56.     Despite these requirements, DentaQuest failed to comply with its duties under HIPAA and their own Privacy Practices. In particular, DentaQuest failed to:

a.  maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.  adequately protect Plaintiffs' and Class Members' PHI;

c.  ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d.  implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e.  implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f.  implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g.  protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding

17

individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h. ensure compliance with the electronic PHI security standard rules by their workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

i. train all members of their workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of their workforce to carry out their responsibilities and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b)

57. DentaQuest failed to comply with its duties under HIPAA despite being aware of the risks associated with unauthorized access to Plaintiffs' and Class Members' PHI.

## DentaQuest Violated FTC Guidelines

58. The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited DentaQuest from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

59.     The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[30]

60.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[31] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

61.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[32]

62.     The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to

---

[30] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed June 2, 2026).

[31] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed June 2, 2026).

[32]     FTC, *Start With Security*, *supra*.

confidential consumer data as an unfair act or practice prohibited by Section 5 of the

FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures

businesses must take to meet their data security obligations.

63.    DentaQuest failed to properly implement basic data security practices.

DentaQuest's failure to employ reasonable and appropriate measures to protect against

unauthorized access to Plaintiffs' and Class Members' PII and PHI constitutes an unfair

act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

64.    DentaQuest was at all times fully aware of its obligation to protect

Plaintiffs' and Class Members' PII and PHI because of its position as a healthcare

provider. DentaQuest was also aware of the significant repercussions that would result

from its failure to do so.

**Plaintiff Hilaire's Experience**

65.    Plaintiff Caridad Hilaire has been a DentaQuest plan member for

approximately three years. DentaQuest obtained Ms. Hilaire's PII and PHI in the course

of conducting its regular business operations.

66.    At the time of the Data Breach, DentaQuest retained Ms. Hilaire's PII and

PHI.

67.    Ms. Hilaire greatly values her privacy and is very careful about sharing

her sensitive PII and PHI. Ms. Hilaire diligently protects her PII and PHI and takes

proactive steps to ensure her PII and PHI are kept safe and secure and stores any

documents containing PII and PHI in a safe and secure location. She has never

20

knowingly transmitted unencrypted sensitive PII or PHI over the Internet or any other unsecured source.

68. DentaQuest obtained and continues to maintain Ms. Hilaire's PII and PHI and has a continuing legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

69. The Data Breach has caused Ms. Hilaire to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from her PII and PHI being placed in the hands of criminals.

70. As a result of the Data Breach, Ms. Hilaire is presently at risk and will continue to be at increased risk of identity theft and fraud for years to come.

71. Ms. Hilaire has a continuing interest in ensuring that her PII and PHI, which, upon information and belief, remain backed up in DentaQuest's possession, are protected and safeguarded from future breaches.

**Plaintiff McCants' Experience**

72. Plaintiff Tawana McCants has been a DentaQuest plan member for approximately one year. DentaQuest obtained Ms. Hilaire's PII and PHI in the course of conducting its regular business operations.

73. At the time of the Data Breach, DentaQuest retained Ms. McCants' PII and PHI.

74. Ms. McCants greatly values her privacy and is very careful about sharing her sensitive PII and PHI. Ms. McCants diligently protects her PII and PHI and takes

proactive steps to ensure her PII and PHI are kept safe and secure and stores any documents containing PII and PHI in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII or PHI over the Internet or any other unsecured source.

75. DentaQuest obtained and continues to maintain Ms. McCants' PII and PHI and has a continuing legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

76. The Data Breach has caused Ms. McCants to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from her PII and PHI being placed in the hands of criminals.

77. As a result of the Data Breach, Ms. McCants is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

78. Ms. McCants has a continuing interest in ensuring that her PII and PHI, which, upon information and belief, remain backed up in DentaQuest's possession, are protected and safeguarded from future breaches.

**CLASS ACTION ALLEGATIONS**

79. Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of a Class as defined below:

All persons in the United States and its territories whose PII and/or PHI was compromised in the Data Breach.

80. Excluded from the Class are DentaQuest, any entity in which DentaQuest has a controlling interest, and DentaQuest's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

81. Plaintiffs reserve the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiffs.

82. **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. DentaQuest has disclosed that the Data Breach affected over 357,000 individuals. All Class Members' names and addresses are available from DentaQuest's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

83. **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

   a. Whether and to what extent DentaQuest had a duty to protect the PII and PHI of Class Members;

   b. Whether DentaQuest was negligent in collecting and storing Plaintiffs' and Class Members' PII and PHI;

23

c.  Whether DentaQuest had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

d.  Whether DentaQuest took reasonable steps and measures to safeguard Plaintiffs' and Class Members' PII and PHI;

e.  Whether DentaQuest failed to adequately safeguard the PII and PHI of Class Members;

f.  Whether DentaQuest failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

g.  Whether DentaQuest adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII and PHI had been compromised;

h.  Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of DentaQuest's wrongful conduct;

i.  Whether Plaintiffs and Class Members are entitled to restitution because of DentaQuest's wrongful conduct;

j.  Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k.  Whether Plaintiffs and Class Members are entitled to identity theft protection for their respective lifetimes.

24

84. **Typicality:** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII and PHI, like that of every other Class Member, was disclosed by DentaQuest. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through DentaQuest's common misconduct. Plaintiffs are advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiffs. Plaintiffs' claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

85. **Adequacy:** Plaintiffs are an adequate representative of the Class because Plaintiffs are a member of the Class and is committed to pursuing this matter against DentaQuest to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

86. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because DentaQuest has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. DentaQuest's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on DentaQuest's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

87.    **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like DentaQuest. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

88.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because DentaQuest would necessarily gain an unconscionable advantage in non-class litigation, since DentaQuest would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual

26

actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

89.     The litigation of Plaintiffs' claims is manageable. DentaQuest's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

90.     Adequate notice can be given to Class Members directly using information maintained in DentaQuest's records.

91.     Unless a class-wide injunction is issued, DentaQuest may continue to maintain inadequate security with respect to the PII and PHI of Class Members, DentaQuest may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and DentaQuest may continue to act unlawfully as set forth in this Complaint.

92.     DentaQuest has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

## COUNT I
## NEGLIGENCE
### (on behalf of Plaintiffs and the Class)

93.     Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

94.     DentaQuest knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII and PHI, and had a duty to exercise reasonable care

27

in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing DentaQuest's security protocols to ensure that Plaintiffs' and Class Members' PII and PHI in DentaQuest's possession was adequately secured and protected, that Plaintiffs' and Class Members' PII and PHI on DentaQuest's networks were not accessible to criminals without authorization, and that DentaQuest's employees tasked with maintaining such information were adequately trained on security measures regarding the security of Plaintiffs' and Class Members' PII and PHI.

95.    Plaintiffs and Class Members entrusted their PII and PHI to DentaQuest with the understanding that DentaQuest would safeguard their information, use their PII and PHI for business purposes only, and not disclose their PII and PHI to unauthorized third parties.

96.    DentaQuest knew or reasonably should have known that a failure to exercise due care in the collecting, storing, and using Plaintiffs' and Class Members' PII and PHI involved an unreasonable risk of harm to Plaintiffs and Class Members.

97.    DentaQuest also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and Class Members' PII and PHI.

98.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and Class Members was reasonably foreseeable, particularly in light of prior data breaches and disclosures prevalent in today's digital landscape, including the explosion of data breaches involving similarly situated healthcare providers.

28

99.     Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. DentaQuest knew or should have known of the inherent risks in collecting and storing Plaintiffs' and Class Members' PII and PHI, the critical importance of providing adequate security of that information, the necessity for encrypting PHI stored on DentaQuest's systems, and that they had inadequate IT security protocols in place to secure Plaintiffs' and Class Members' PII and PHI.

100.    DentaQuest's misconduct created a foreseeable risk of harm to Plaintiffs and Class Members. DentaQuest's misconduct included, but was not limited to, failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

101.    Plaintiffs and Class Members had no ability to protect their PII and PHI that was in DentaQuest's possession.

102.    DentaQuest was in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

103.    DentaQuest had, and continues to have, a duty to timely disclose that Plaintiffs' and Class Members' PII and PHI within their possession was compromised and precisely the type(s) of information that were compromised.

104.    DentaQuest had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII and PHI.

105.    DentaQuest systematically failed to provide adequate security for data in its possession.

29

106. DentaQuest, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII and PHI within their possession.

107. DentaQuest, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII and PHI.

108. DentaQuest, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiffs and Class Members that the PII and PHI within DentaQuest's possession might have been compromised and precisely the type of information compromised.

109. DentaQuest's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII and PHI to be compromised.

110. But for all of DentaQuest's acts of negligence detailed above, including allowing cyber criminals to access its systems containing Plaintiffs' and Class Members' PII and PHI, that PII and PHI would not have been compromised.

111. Plaintiffs never transmitted their own unencrypted PHI over the internet or any other unsecured source.

112. Following the Data Breach, Plaintiffs' PII and PHI has been seized by unauthorized third parties who are now free to exploit and misuse that PII and PHI,

and Plaintiffs are unable to prevent its further dissemination. Plaintiffs' PII and PHI are forever compromised.

113.    But for the Data Breach, Plaintiffs would not have incurred the loss and publication of their PII and PHI and other injuries.

114.    There is a close causal connection between DentaQuest's failure to implement security measures to protect Plaintiffs' and Class Members' PII and PHI and the harm suffered, or risk of imminent harm suffered by Plaintiffs and Class Members. Plaintiffs' and Class Members' PII and PHI was accessed and compromised as the proximate result of DentaQuest's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures and encryption.

115.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, loss of privacy, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

116.    As a result of DentaQuest's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their PII and PHI, which is still in the possession of third parties, will be used for fraudulent purposes.

117.    Plaintiffs seek the award of actual damages on behalf of herself and the Class.

118.    Plaintiffs seek injunctive relief on behalf of the Class in the form of an order (1) compelling DentaQuest to institute appropriate data collection and

safeguarding methods and policies with regard to patient information; and (2)

compelling DentaQuest to provide detailed and specific disclosure of what types of PII

and PHI have been compromised as a result of the Data Breach.

**COUNT II**
**NEGLIGENCE PER SE**
**(on behalf of Plaintiffs and the Class)**

119.    Plaintiffs re-allege and incorporate by reference herein all the allegations

contained in the preceding paragraphs.

120.    Pursuant to HIPAA (42 U.S.C. § 1302d *et seq.*) and the FTC Act,

DentaQuest was required by law to maintain adequate and reasonable data and

cybersecurity measures to maintain the security and privacy of Plaintiffs' and Class

Members' PHI and PII.

121.    DentaQuest violated HIPAA by failing to comply with applicable industry

standards. DentaQuest's conduct was particularly unreasonable given the nature and

amount of PII and PHI it obtained and stored, and the exposure of Plaintiffs' and Class

Members' sensitive PII and PHI.

122.    DentaQuest breached its duties by failing to employ industry standard

data and cybersecurity measures to ensure their compliance with those laws, including,

but not limited to, proper segregation, access controls, password protection, encryption,

intrusion detection, secure destruction of unnecessary data, and penetration testing.

123.    It was reasonably foreseeable, particularly given the growing number of

data breaches of health information, that the failure to reasonably protect and secure

Plaintiffs' and Class Members' PII and PHI in compliance with applicable laws would

32

result in an unauthorized third-party gaining access to DentaQuest's networks, databases, and computers that stored or contained Plaintiffs' and Class Members' PII and PHI.

124. DentaQuest's violations of HIPAA constitute negligence per se.

125. Plaintiffs and Class Members are within the category of persons HIPAA was intended to protect.

126. The harm that occurred as a result of the Data Breach is the type of harm HIPAA was intended to guard against.

127. Plaintiffs' and Class Members' PII and PHI constitute personal property that was stolen due to DentaQuest's negligence, resulting in harm, injury and damages to Plaintiffs and Class Members.

128. DentaQuest's conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiffs' and Class Members' unencrypted PII and PHI, and Plaintiffs and Class Members have suffered and will continue to suffer damages as a result of DentaQuest's conduct. Plaintiffs and Class Members seek damages and other relief as a result of DentaQuest's negligence.

## COUNT III
## BREACH OF EXPRESS CONTRACT
### (on behalf of Plaintiffs and the Class)

129. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

130. Plaintiffs and Class Members entered into written agreements with DentaQuest in the course of medical services and related services DentaQuest provided

33

to Plaintiffs and Class Members. The agreements involved a mutual exchange of consideration whereby DentaQuest provided these services in exchange for payment from Class Members, Class Members' insurance carriers, and/or government programs remitting payment on Class Members' behalf.

131. Plaintiffs and Class Members and/or their insurance carriers paid DentaQuest for their services and performed under these agreements.

132. DentaQuest's failure to protect Plaintiffs' and Class Members' PII and PHI constitutes a material breach of the terms of these agreements by DentaQuest.

133. As a direct and proximate result of DentaQuest's breaches of express contract, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT IV
## BREACH OF IMPLIED CONTRACT
### (on behalf of Plaintiffs and the Class)

134. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

135. When Plaintiffs and Class Members provided their PII and PHI to DentaQuest, they entered into implied contracts with DentaQuest, under which DentaQuest agreed to take reasonable steps to protect Plaintiffs' and Class Members' PII and PHI, comply with its statutory and common law duties to protect Plaintiffs' and Class Members' PII and PHI, and to timely notify them in the event of a data breach.

136. DentaQuest solicited and invited Plaintiffs and Class Members to provide their PII and PHI as part of DentaQuest's provision of medical services and related

34

services. Plaintiffs and Class Members accepted DentaQuest's offers and provided their PII and PHI to DentaQuest.

137. When entering into implied contracts, Plaintiffs and Class Members reasonably believed and expected that DentaQuest's data security practices complied with its statutory and common law duties to adequately protect Plaintiffs' and Class Members' PII and PHI and to timely notify them in the event of a data breach.

138. DentaQuest's implied promise to safeguard PII and PHI is evidenced by, *e.g.*, the representations in DentaQuest's privacy policy set forth above.

139. Plaintiffs and Class Members would not have provided their PII and PHI to DentaQuest had they known that DentaQuest would not safeguard their PII and PHI, as promised, or provide timely notice of a data breach.

140. Plaintiffs and Class Members fully performed their obligations under their implied contracts with DentaQuest.

141. DentaQuest breached its implied contracts with Plaintiffs and Class Members by failing to safeguard Plaintiffs' and Class Members' PII and PHI and by failing to provide them with timely and accurate notice of the Data Breach.

142. The losses and damages Plaintiffs and Class Members sustained include, but are not limited to:

    a. Theft of their PII and PHI;

    b. Costs associated with purchasing credit monitoring and identity theft protection services;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of their PII and PHI;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling, and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII and PHI being placed in the hands of criminals;

g. Damages to and diminution in value of their PII and PHI entrusted, directly or indirectly, to DentaQuest with the mutual understanding that DentaQuest would safeguard Plaintiffs' and Class Members' data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their PII and PHI, which remains in DentaQuest's possession and is subject to further breaches so long as DentaQuest fail to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' data; and

i. Emotional distress from the unauthorized disclosure of PII and PHI to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiffs and Class Members.

143. As a direct and proximate result of DentaQuest's breach of contract, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## COUNT V
### UNJUST ENRICHMENT
### (on behalf of Plaintiffs and the Class)

144. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

145. Plaintiffs and Class Members have an interest, both equitable and legal, in their PHI and PII that was conferred upon, collected by, and maintained by DentaQuest and that was stolen in the Data Breach.

146. DentaQuest benefitted from the conferral upon it of Plaintiffs' and Class Members' PII and PHI, and by its ability to retain and use that information. DentaQuest understood that it so benefitted.

147. DentaQuest also understood and appreciated that Plaintiffs' and Class Members' PHI and PII was private and confidential and that its value depended upon DentaQuest maintaining its privacy and confidentiality.

148. But for DentaQuest's willingness and commitment to maintain its privacy and confidentiality, that PHI and PII would not have been transferred to and entrusted

37

with DentaQuest. Further, if DentaQuest had disclosed that its data security measures were inadequate, DentaQuest would not have been permitted to continue in operation by regulators and the healthcare marketplace.

149. As a result of DentaQuest's wrongful conduct as alleged in this Complaint (including, among other things, its failure to employ adequate data security measures, its continued maintenance and use of Plaintiffs' and Class Members' PII and PHI without having adequate data security measures, and its other conduct facilitating the theft of that PII and PHI), DentaQuest have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members.

150. DentaQuest's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compilation and use of Plaintiffs' and Class Members' sensitive PHI and PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers.

151. Under the common law doctrine of unjust enrichment, it is inequitable for DentaQuest to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiffs' and Class Members' PII and PHI in an unfair and unconscionable manner. DentaQuest's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

152. The benefit conferred upon, received, and enjoyed by DentaQuest was not conferred officiously or gratuitously, and it would be inequitable and unjust for DentaQuest to retain the benefit.

38

## COUNT VI
## INJUNCTIVE/DECLARATORY RELIEF
### (on behalf of Plaintiffs and the Class)

153.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

154.    DentaQuest owes a duty of care to Plaintiffs and Class Members requiring it to adequately secure PII and PHI.

155.    DentaQuest still stores Plaintiffs' and Class Members' PII and PHI.

156.    Since the Data Breach, DentaQuest has announced no specific changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent similar incidents from occurring in the future.

157.    DentaQuest has not satisfied its legal duties to Plaintiffs and Class Members.

158.    Actual harm has arisen in the wake of the Data Breach regarding DentaQuest's duties of care to provide security measures to Plaintiffs and Class Members. Further, Plaintiffs and Class Members are at risk of additional or further harm due to the exposure of their PII and PHI, and DentaQuest's failure to address the security failings that led to that exposure.

159.    Plaintiffs, therefore, seek a declaration that: (a) DentaQuest's existing security measures do not comply with its duties of care to provide adequate security; and (b) to comply with its duties of care, DentaQuest must implement and maintain reasonable security measures, including, but not limited to, the following:

a.  ordering that DentaQuest engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on DentaQuest's systems on a periodic basis, and ordering DentaQuest to promptly correct any problems or issues detected by such third-party security auditors;

b.  ordering that DentaQuest engage third-party security auditors and internal personnel to run automated security monitoring;

c.  ordering that DentaQuest audit, test, and train its security personnel regarding any new or modified procedures;

d.  ordering that DentaQuest segment PHI by, among other things, creating firewalls and access controls so that if one area of DentaQuest's system is compromised, hackers cannot gain access to other portions of DentaQuest's systems;

e.  ordering that DentaQuest purge, delete, and destroy in a reasonably secure manner PII and PHI not necessary for its provision of services;

f.  ordering that DentaQuest conduct regular computer system scanning and security checks; and

g.  ordering that DentaQuest routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

40

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, pray for relief as follows:

a.  for an Order certifying the Class as defined herein, and appointing Plaintiffs and their counsel to represent the Class;

b.  for equitable relief enjoining DentaQuest from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII and PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

c.  for equitable relief compelling DentaQuest to use appropriate cybersecurity methods and policies with respect to PII and PHI collection, storage, and protection, and to disclose with specificity to Class Members the types of PII and PHI compromised;

d.  for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e.  for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f.  for prejudgment interest on all amounts awarded; and

g.  such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury on all issues so triable.

41

Dated: June 3, 2026                    Respectfully submitted,

                                       **BAILEY & GLASSER LLP**


                                       */s/ John Roddy*
                                       John Roddy (BBO # 424240)
                                       jroddy@baileyglasser.com
                                       101 Arch Street, 8th Floor
                                       Boston, MA 02110
                                       (617) 439-6730
                                       (617) 951-3954 (fax)

                                       Bart D. Cohen
                                       Panida A. Anderson
                                       **BAILEY & GLASSER, LLP**
                                       1055 Thomas Jefferson Street NW
                                       Suite 540
                                       Washington, DC 20007
                                       (202) 463-2101
                                       bcohen@baileyglasser.com*
                                       panderson@baileyglasser.com*

                                       David D. Bibiyan
                                       Younjin (Jennifer) Lee
                                       **BIBIYAN LAW GROUP, P.C.**
                                       1460 Wilshire Boulevard
                                       Los Angeles, California 90024
                                       (310) 438-5555
                                       david@tomorrowlaw.com
                                       jlee@tomorrowlaw.com

                                       *Counsel for Plaintiffs and the Proposed Class*